Stephen KELLY, et al., Plaintiffs,

v.

PAN–AMERICAN LIFE INSURANCE COMPANY, et al., Defendants.

No. 90–4231–CV–C–5.

United States District Court,
W.D. Missouri, C.D.

May 22, 1991.

On Motion for Summary Judgment
June 12, 1991.

Craig A. Van Matre, Columbia, Mo., for plaintiffs.

Keith A. Wenzel and Nicholas M. Monaco, Jefferson City, Mo., for Pan–American Life Ins. Co.

Thomas M. Schneider, Jones, Schneider & Bartlett, Columbia, Mo., for Babel–Peak Agency, Inc.

## ORDER

SCOTT O. WRIGHT, District Judge.

Before this Court is the motion to dismiss of defendants Pan–American Life Insurance Company ("Pan–American") and National Insurance Services, Inc. ("National"). Defendant Babel–Peak Agency, Inc. ("Babel–Peak") moves separately to dismiss and joins in Pan–American and National's suggestions in support. For the following reasons, Pan–American and National's motion to dismiss will be granted in part and denied in part. Babel–Peak's motion to dismiss will be denied.

### Facts

Plaintiffs Stephen and Lana Kelly are husband and wife. Lana Kelly was covered by health insurance issued by Pan–American through a group health insurance plan maintained by McCoy Development, Lana Kelly's employer. Lana Kelly gave birth to Jessica Kelly on October 10, 1988. On October 19, 1988, Jessica Kelly underwent surgery to treat a congenital heart defect. Treatment of this condition has cost approximately $32,000.00.

Pan–American denies that Jessica Kelly's medical treatment is covered under the group health insurance plan issued to McCoy Development.

Plaintiffs filed this suit originally in state court. Plaintiffs allege four separate counts. Under Count I, plaintiffs allege

that Pan–American breached its health insurance contract under which plaintiffs allege the medical expenses for treatment of Jessica Kelly are covered. Count II is an action under Missouri statute against Pan–American for vexatious refusal to pay. Count III alleges that Babel–Peak negligently misprepresented to plaintiffs that the Pan–American insurance plan covered Jessica Kelly's medical treatment. Count IV is an action for equitable estoppel seeking to enjoin Pan–American from denying coverage of Jessica Kelly's medical treatment because of the misrepresentations of Babel–Peak.

Defendants removed the case to federal court on federal question jurisdiction alleging that the insurance plan is covered by the Employee Retirement Income Security Act ("ERISA").

Pan–American issued a group health insurance policy to the Trustee of the Ultimate Trust, which provides benefits for certain McCoy Development employees and their qualified dependants. McCoy Development pays the premiums for its employees covered by the plan.

### Standard for Dismissal

In reviewing a motion to dismiss, all factual assertions made by the non-moving party must be assumed to be true. *Neitzke v. Williams*, 490 U.S. 319, 326, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989). Dismissal will be granted only "if as a matter of law 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *Neitzke*, 490 U.S. at 327, 109 S.Ct. at 1832 (citation omitted).

### Discussion

This Court concludes that laws applicable to Pan–American's motion to dismiss differ from those applicable to National and Babel–Peak's motions to dismiss. Analysis of these motions will be set forth separately below.

### I. *Pan–American's Motion to Dismiss*

An "employee welfare benefit plan" "means any plan ... established or maintained by an employer ... to the extent that such plan ... was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits.... 29 U.S.C. § 1002(1). The insurance plan at issue in this case clearly falls within ERISA control. *Kanne v. Connecticut General Life Ins. Co.*, 859 F.2d 96, 98–99 (9th Cir.1988).

■ Because the health insurance coverage issued by Pan–American is governed by ERISA, state law causes of action against Pan–American are pre-empted by ERISA. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 62, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987). It does not necessarily follow that plaintiffs' breach of contract claim must be dismissed. If plaintiffs state facts which support a cause of action under ERISA, *Neitzke, supra*, even though titled "breach of contract," and if Pan–American will not be prejudiced by proceeding with this cause of action, this Court should exercise its jurisdiction over plaintiffs' ERISA claim.

■ A beneficiary to an ERISA plan may bring a civil action to recover benefits due to her under the terms of the plan. 29 U.S.C. § 1132(a)(1)(B). Plaintiffs' breach of contract claim alleges that Lana Kelly was covered by the Pan–American health insurance policy and that Jessica Kelly was covered as a dependant. This is sufficient to state a cause of action under ERISA. This Court will thus construe plaintiffs' factual allegations as an ERISA claim.

Pan–American will not be prejudiced by such a construction. Pan–American was well aware that plaintiffs were bringing an ERISA claim and, in fact, removed this case to federal court on that basis.

■ Plaintiffs' vexatious refusal to pay cause of action against Pan–American, however, is pre-empted by ERISA, *In re Life Ins. Co. of North America*, 857 F.2d 1190, 1194 (8th Cir.1988), and must therefore be dismissed.

■ Plaintiffs argue that their cause of action based on equitable estoppel survives

pre-emption. In support of this argument plaintiffs cite to *Kane v. Aetna Life Ins.*, 893 F.2d 1283 (11th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 232, 112 L.Ed.2d 192 (1990). In *Kane*, the Eleventh Circuit found that ERISA pre-empts state law claims based on equitable estoppel. 893 F.2d at 1285. Because ERISA pre-empts state causes of action, federal common law doctrines must be developed to cover federal causes of action. *Kane*, 893 F.2d at 1286. The federal common law doctrine of equitable estoppel thus prevents a plan administrator from denying its interpretation of ambiguous plan terms. *Id.; see also, Brewer v. Lincoln Nat'l Life Ins. Co.*, 921 F.2d 150, 154 (8th Cir.1990) (Courts are to use federal common law rules to interpret ERISA plan terms; terms should be accorded their ordinary, not specialized, meanings).

This Court can only determine whether benefits are due to plaintiffs under the terms of the insurance policy at issue. If Pan–American or its authorized agents have provided an interpretation of ambiguous plan terms, Pan–American will be estopped from denying this interpretation. The federal common law doctrine of equitable estoppel is used only to interpret plan terms. It does not provide a separate cause of action. Plaintiffs' state law cause of action based on equitable estoppel, therefore, must be dismissed.

As to Pan–American, then, all that this Court is to do is determine whether Jessica Kelly is covered under the terms of the health insurance policy issued by Pan–American. *Wallace v. Firestone Tire & Rubber Co.*, 882 F.2d 1327, 1329 (8th Cir. 1989). This Court reviews the policy coverage de novo, and the issue is simply one of contract interpretation. *Harper v. R.H. Macy & Co., Inc.*, 920 F.2d 544, 545 (8th Cir.1990).

■ Pan–American has not specifically addressed the issue of whether Missouri's law requiring health insurance coverage for a child born to an insured carrying family member health insurance, Mo.Rev. Stat. § 376.406.1, is pre-empted by ERISA. As plaintiffs point out, any argument that application of this statute is pre-empted is foreclosed by *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 744, 105 S.Ct. 2380, 2391, 85 L.Ed.2d 728 (1985) (Mandated benefits laws are saved from pre-emption by ERISA's saving clause).

The specific issue insofar as Pan–American is concerned, then, is whether Lana Kelly was carrying dependant health insurance through the Pan–American plan at the time Jessica Kelly was born. *Shaw v. Republic Nat'l Life Ins. Co.*, 622 F.Supp. 93, 96 (E.D.Mo.1985). If Lana Kelly was carrying family or dependant health insurance at the time Jessica Kelly was born, Pan–American must provide health insurance coverage for Jessica Kelly. If such health insurance coverage was not in place at the time of Jessica Kelly's birth, Pan–American is not responsible for the medical expenses incurred due to Jessica Kelly's medical needs. Given the factual simplicity of this issue, this Court believes that it can be resolved on a motion for summary judgment through either a stipulation of facts or the filing of pertinent exhibits. The parties will be directed to file either a stipulation of facts or exhibits or show cause why summary judgment is inappropriate on this issue.

Pan–American also asks, if its motion to dismiss is not granted, that this Court rule on whether plaintiffs have a right to a jury trial on their ERISA claim. This issue is undecided in the Eighth Circuit. *See Anderson v. Alpha Portland Industries, Inc.*, 836 F.2d 1512, 1520 (8th Cir.1988). This Court believes that it would be imprudent to consider this issue unnecessarily. Therefore, this Court will reserve ruling on this issue pending the parties' responses as noted above.

## II. *National and Babel–Peak's Motions to Dismiss*

Plaintiffs allege they inquired of Babel–Peak, an agent for Pan–American, as to whether Jessica Kelly would be covered under the existing insurance coverage on the policy issued by Pan–American. Plaintiffs state that Babel–Peak assured them that Jessica Kelly would be covered.

Count III of plaintiffs' complaint alleges negligent misrepresentation by Babel–Peak.

Babel–Peak has filed a cross-claim against Pan–American and National alleging that any misrepresentation conveyed to plaintiffs was the result of misinformation supplied to it by National. National has filed its cross-claim against Babel–Peak alleging lack of authorization on Babel–Peak's part to inform plaintiffs that Jessica Kelly would be covered.

■ National and Babel–Peak, as agents for Pan–American, are not responsible for controlling or managing the Pan–American insurance plan. As such, they are neither one a plan fiduciary. 29 U.S.C. § 1002(21)(A).

The Courts are split on the issue of whether ERISA pre-empts state law causes of action against a nonfiduciary. One group finds that Congress intended ERISA to pre-empt state claims against a non-fiduciary. *See Gibson v. Prudential Ins. Co.,* 915 F.2d 414, 417 (9th Cir.1990); *Casper Air Service v. Sun Life Assurance Co. of Canada,* 752 F.Supp. 1005, 1009 (D.Wyo. 1990). These courts find pre-emption despite recognition of the "gap" it creates leaving a plaintiff no remedy. *See Lee v. E.I. DuPont de Nemours & Co.,* 894 F.2d 755 (5th Cir.1990); *Howard v. Parisian, Inc.,* 807 F.2d 1560 (11th Cir.1987).

■ Other courts hold that ERISA does not pre-empt state claims against a nonfiduciary because the nonfiduciary is not regulated by ERISA and the claims are therefore not "related to" ERISA. *See Capital Mercury Shirt Corp. v. Employers Reinsurance Corp.,* 749 F.Supp. 926 (W.D.Ark.1990); *Jordan v. Reliable Life Ins. Co.,* 694 F.Supp. 822 (N.D.Ala.1988); *Southern California Meat Cutters Union v. Investors Research Co.,* 687 F.Supp. 506 (C.D.Cal.1988); *Munoz v. Prudential Ins. Co.,* 633 F.Supp. 564 (D.C.Colo.1986).

This Court finds the latter line of decisions to be more persuasive. Neither National nor Babel–Peak is responsible for assuring the continued viability of the Pan–American group insurance plan. Any re-

covery against National or Babel–Peak would have no effect on the plan. Any remedy had against National or Babel–Peak could not include injunctive relief affecting the plan because National and Babel–Peak do not operate or control the plan. Therefore, this Court finds that ERISA does not pre-empt plaintiffs' state law claim of negligent misrepresentation against Babel–Peak.

■ Nor does it appear that the state law cross-claims of Babel–Peak and National against each other are pre-empted. Neither Babel–Peak nor National is an ERISA fiduciary. Any recovery by either would not relate to an ERISA plan.

While this discussion concludes the issues raised by the parties in their motions to dismiss, this Court finds that it must also determine whether it has jurisdiction to hear the state law claims. Because plaintiffs' claim against Babel–Peak is not pre-empted by ERISA, there is no federal question jurisdiction. Plaintiffs and Babel–Peak are Missouri residents; therefore, this Court lacks diversity jurisdiction. While Babel–Peak and National are diverse, the required amount in controversy does not appear to be present. Moreover, their cross-claims are tied to plaintiffs' claim for misrepresentation.

Additionally, this Court cannot assert pendent party jurisdiction over Babel–Peak or National. *Finley v. United States,* 490 U.S. 545, 109 S.Ct. 2003, 2010, 104 L.Ed.2d 593 (1989); *Alumax Mill Products v. Congress Financial Corp.,* 912 F.2d 996, 1005–7 (8th Cir.1990). While it appears that this Court would have jurisdiction over all parties pursuant to 28 U.S.C. § 1367, this statute does not apply to cases filed prior to December 1, 1990, as is the present case.

This Court finds that it has no choice but to remand plaintiffs' negligent misrepresentation claim against Babel–Peak and Babel–Peak and National's cross-claims for lack of subject matter jurisdiction.

### Conclusion

Plaintiffs' state law breach of contract claim against Pan–American is pre-empted

by ERISA. Plaintiffs' factual pleadings state an ERISA claim against Pan–American. Pan–American removed this action to federal court asserting federal jurisdiction based on ERISA and will, therefore, not be prejudiced by allowing the ERISA claim to proceed.

Plaintiffs' state law claim of negligent misrepresentation against nonfiduciary Babel–Peak is not pre-empted by ERISA. This Court, however, does not have jurisdiction to hear this claim. Nor does this Court have jurisdiction to decide Babel–Peak and National's cross-claims. These claims will, therefore, be remanded to state court.

For the above reasons, it is hereby

ORDERED that defendant Pan–American's motion to dismiss is granted in part and denied in part. It is further

ORDERED that Counts II and IV of plaintiffs' complaint are dismissed with prejudice. It is further

ORDERED that defendant Pan–American and plaintiffs shall file a stipulation of facts or exhibits supporting their positions on Count I of plaintiffs' complaint on or before May 29, 1991, or show that factual disputes exist which preclude summary judgment on Count I. It is further

ORDERED that Count III of plaintiffs' complaint is remanded to state court for lack of subject matter jurisdiction. It is further

ORDERED that defendant Babel–Peak's cross-claim against defendant National and defendant National's cross-claim against defendant Babel–Peak are remanded to state court for lack of subject matter jurisdiction. It is further

ORDERED that defendant Babel–Peak's cross-claim against defendant Pan–American is dismissed as pre-empted by ERISA.

## ON MOTION FOR SUMMARY JUDGMENT

By order dated May 22, 1991, this Court ordered the parties to file a stipulation of facts or exhibits supporting their positions on Count I of plaintiff's complaint. The parties have done so. Additionally, plain-tiffs and Pan–American Life Insurance Company ("Pan–American") have each moved for summary judgment. Under ERISA standards, and for the following reasons, this Court finds that the group health insurance plan issued by Pan–American Life Insurance Company ("Pan–American") to McCoy Development Company as sponsor provides health insurance coverage for Jessica Kelly.

As noted in this Court's order of May 22, 1991, this Court must determine if, under the terms of the insurance policy at issue, Pan–American provides health insurance covering Jessica Kelly. This Court must also determine if Mo.Rev.Stat. § 376.406 applies in the present case and mandates insurance coverage of Jessica Kelly.

■ As part of the health insurance plan under which plaintiff Lana Kelly was covered while working for McCoy Development, it is stated:

> If, while Your Dependent Child or Spouse is a Covered Person, and premiums have been paid and accepted for coverage of another of Your Dependent Children or for Your Spouse, under Your own insurance coverage, prior to the time of the birth of such a newly-born child who is your Dependent Child at the time of his birth, then such newly-born child will automatically be insured as a Dependent Child: (1) from the moment of birth; (2) without Evidence of Insurability; (3) upon written notice to Us by You; but only if (4) such notice is received within 31 days after the date of birth.

The language setting forth the conditions under which a newborn child will be covered is far from clear. Read one way, it appears that a newborn child is covered automatically only if the insured has dependent coverage intact at the time of the new child's birth. This sentence makes far more sense grammatically, however, if "under Your own insurance coverage" is read in the disjunctive with "another of your Dependent Child or for Your Spouse." Pursuant to such a reading, a newborn child would be covered if a dependent child of the insured, the spouse of the insured or

the insured herself was covered at the time of the birth of the child.

This Court would surmise that Pan–American was attempting through the above language to say that if the insured has elected to carry dependent coverage, the insured's newborn will be covered. If the insured elects not to carry dependent coverage, then the insured's newborn child will not be covered. The language in this section of the policy, however, is sufficiently ambiguous that if Pan–American has stated to plaintiffs that Jessica Kelly would be covered at birth, Pan–American is bound by that interpretation. *Kane v. Aetna Life Ins.*, 893 F.2d 1283, 1285 (11th Cir.1990). There is a factual dispute as to whether such representation has been made.

A trial on the above issue of fact, however, is not necessary. This Court, on further review, finds that Mo.Rev.Stat. § 376.406 mandates insurance coverage of Jessica Kelly.

In this Court's order dated May 22, 1991, this Court stated that this section would not mandate insurance coverage of a newborn child unless the insured was carrying dependent coverage at the time of the birth. In coming to this interpretation, this Court found the reasoning in *Shaw v. Republic Nat'l Life Ins. Co.*, 622 F.Supp. 93 (E.D.Mo.1985), to be persuasive.

In *Shaw*, the insured filed suit when an insurance company denied coverage of his newborn child. The child was borne by the insured's wife. The insured did not elect to carry dependent coverage on his wife prior to the birth. The issue before the court was whether Mo.Rev.Stat. § 376.406 mandated coverage of the newborn child.

Mo.Rev.Stat. § 376.406 states:

1. All individual and group health insurance policies ... which provide coverage for a family member of the insured or subscriber shall, as to such family member's coverage, also provide that the health insurance benefits applicable for children shall be payable with respect to a newly born child of the insured or subscriber from the moment of birth.

Because the insured in *Shaw* did not carry coverage for his wife under the poli-cy at issue, the court correctly found that Mo.Rev.Stat. § 376.406 did not mandate coverage of the newborn child. The facts of the present case, however, are critically different. In the instant case, the family member who bore Jessica was covered by the insurance policy.

Section 376.406 appears to have been drafted primarily to extend health insurance to a newborn of an insured's spouse where the insured's spouse is also covered. The language of § 376.406, however, is sufficiently broad to require mandatory health insurance coverage of a newborn child borne by the insured herself. The insured, after all, is a family member of her own family and is the person for which insurance is provided.

In conclusion, this Court finds that Mo. Rev.Stat. § 376.406 mandates that a health insurance policy covering an insured provide health insurance on a child borne by the insured from the moment of birth. As noted in this Court's order of May 22, 1991, this statute is not pre-empted by ERISA and, therefore, mandates coverage of Jessica Kelly in the instant case. It is undisputed that plaintiffs Steven and Lana Kelly properly notified Pan–American of the birth of Jessica Kelly within one month of her birth as permitted by § 376.406 and required by Pan–American's policy.

Plaintiffs also seek attorney's fees and costs pursuant to 29 U.S.C. § 1132(g)(1). This Court agrees that an award of attorney's fees and costs to plaintiffs is appropriate. Defendant Pan–American, however, will be given an opportunity to respond to the reasonableness of the fees and costs prior to this Court ordering such an award.

For the above reasons, it is hereby

ORDERED that defendant Pan–American's motion for summary judgment is denied. It is further

ORDERED that plaintiff's motion for summary judgment is granted. It is further

ORDERED that defendant Pan–American is enjoined from denying health insur-

ance coverage of Jessica Kelly and shall pay over to plaintiffs, on or before June 28, 1991, the amounts due under the policy for a covered dependent child. It is further

ORDERED that defendant Pan–American shall file on or before June 28, 1991, its response concerning the reasonableness of the amount of attorney's fees requested by plaintiffs.